**HUNTON ANDREWS KURTH LLP**
EMILY BURKHARDT VICENTE (State Bar No. 263990)
ebvicente@HuntonAK.com
SONYA D. GOODWIN (State Bar No. 281005)
sgoodwin@HuntonAK.com
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone: 213 • 532 • 2000
Facsimile: 213 • 532 • 2020

Attorneys for Defendants
CINEMARK USA, INC. and
CENTURY THEATRES, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| MADISON KLEINE, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CINEMARK USA, INC., a Texas corporation; CENTURY THEATRES, INC., a California corporation; and DOES 1 THROUGH 10, inclusive<br><br>Defendants. | Case No.: 5:18-CV-2425<br><br>[Removal from San Bernardino County Superior Court Case No. CIVDS1825602]<br><br>**DEFENDANT CINEMARK USA, INC.'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C §§ 1332, 1441, AND 1446 (DIVERSITY JURISDICTION)**<br><br>[Filed Concurrently with Civil Cover Sheet, Corporate Disclosure Statement, Notice of Interested Parties, and Declaration of Scott Green]<br><br>Complaint Filed: September 28, 2018 |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that Defendant Cinemark USA, Inc. ("Cinemark") hereby removes to this Court, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, the state court action described below.[1] In support thereof, Cinemark states as follows:

On September 28, 2018, Plaintiff Madison Kleine ("Plaintiff") filed an action in the Superior Court for the State of California, County of San Bernardino, as Case No. CIVDS1825602, *Madison Kleine vs. Cinemark USA, Inc., a Texas Corporation; Century Theatres, Inc., a California corporation; and Does [1] through 10, inclusive* (the "Action").

On October 17, 2018, Plaintiff served the Summons and Complaint on Defendant Cinemark. On November 1, 2018 Plaintiff served the Summons and Complaint on Defendant Century Theatres, Inc. ("Century"). Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the Summons and Complaint are attached hereto as **Exhibit A**.

On November 14, 2018, Cinemark and Century (together, "Defendants") filed their responsive pleadings in the form of Answers to Plaintiff's Complaint. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the Answers are attached hereto as **Exhibit B**.

As set forth more fully below, the Action is one which Cinemark may remove to this Court under 28 U.S.C. § 1441 because Cinemark has satisfied the procedural requirements and this Court has subject matter jurisdiction over the Action under 28 U.S.C. § 1332(a). There is complete diversity among all proper parties. The other entity defendant, Century, was fraudulently joined because there is no possibility that

---

[1] Although not required, Defendant Century Theatres, Inc. ("Century") joins in this removal. *See United Computer Sys. Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002) ("The 'rule of unanimity' does not apply to 'nominal, unknown or fraudulently joined parties.'").

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1

DEFENDANT CINEMARK USA, INC.'S NOTICE OF REMOVAL OF ACTION PURSUANT TO
28 U.S.C §§ 1332, 1441, AND 1446 (DIVERSITY JURISDICTION)

Plaintiff may prevail on her causes of action against that entity. (*See* Section II.A., below.)

## I.
## DEFENDANT CINEMARK HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL

1. Plaintiff served Defendant Cinemark with the Complaint on October 17, 2018. Because Cinemark filed the Notice of Removal within 30 days of that date, the Notice of Removal is timely. *See* 28 U.S.C. § 1446(b).

2. Venue lies in the United States District Court for the Central District of California because Plaintiff filed the Action in this judicial district and it remains pending in this judicial district. *See* 28 U.S.C. § 1441(a).

3. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders served upon Defendant Cinemark are attached hereto as follows:

   a. **Exhibit A** – Plaintiff's Summons and Complaint;
   b. **Exhibit B** – Defendants' Answers.

4. Pursuant to 28 U.S.C. § 1332(d), a copy of this Notice of Removal is being served upon Plaintiff's counsel and a copy is being filed with the Clerk of the Superior Court for the State of California, County of San Bernardino.

## II.
## REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION

5. The Action is a civil action over which this Court has diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332(a). The Action is removable because there is complete diversity between the proper parties and the amount in controversy exceeds the jurisdictional minimum. Therefore, removal is proper under 28 U.S.C. § 1441.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

### A. The Diversity Of Citizenship Requirement Is Satisfied.

6. **Plaintiff's Citizenship.** For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place he or she resides with the intention to remain or to which he or she intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

7. As set forth in the Complaint, Plaintiff is a "resident of San Bernardino County, California." (Compl. ¶ 2.) As such, Plaintiff is domiciled in, and for purposes of diversity jurisdiction is a citizen of the State of California.

8. **Cinemark's Citizenship.** A corporation is a citizen of every state by which it has been incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010). The phrase "principal place of business" in 28 U.S.C. § 1332(c)(1) refers to the place where a corporation's high-level officers direct, control, and coordinate the corporation's activities, i.e., its "nerve center," which typically will be found at its corporate headquarters. *Hertz Corp.*, 559 U.S. at 92–93.

9. Cinemark is incorporated in the State of Texas with its principal place of business in Texas. (Declaration of Scott Green ("Green Decl.") ¶ 4.) Cinemark's headquarters—where its high-level officers direct, control, and coordinate the corporation's activities—is located in Plano, Texas. (Green Decl. ¶ 4.) Thus, Cinemark is a citizen of Texas, and not a citizen of California.

10. Because Plaintiff is a citizen of California and Cinemark is <u>not</u> a citizen of California, the requisite diversity of citizenship exists. *See* 28 U.S.C. § 1332(c)(1).

3

DEFENDANT CINEMARK USA, INC.'S NOTICE OF REMOVAL OF ACTION PURSUANT TO
28 U.S.C §§ 1332, 1441, AND 1446 (DIVERSITY JURISDICTION)

11. **<u>Century's Citizenship.</u>** Century is not a proper party to this lawsuit.[2] For purposes of diversity, its citizenship should be disregarded because it has been fraudulently joined in the Action.

      i. **Fraudulent Joinder Standard.**

12. Fraudulent joinder constitutes "one exception to the requirement of complete diversity." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). Fraudulent joinder exists when there is either (1) actual fraud in the pleading of jurisdictional facts, or (2) an inability of the plaintiff to establish a cause of action against the non-diverse party in state court. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009); *see also Higley v. Cessna Aircraft Co.*, 2010 WL 3184516, at *1 (C.D. Cal. July 21, 2010) (defendant fraudulently joined when "plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state").

13. Generally, a court "will look only to a plaintiff's pleadings to determine removability." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (internal quotation marks omitted). However, where fraudulent joinder is an issue, "'[t]he defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent.'" *Id.* (quoting *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)); *see also Ross v. Morgan Stanley Smith Barney, LLC*, 2013 WL 865598, at *3 (C.D. Cal. Mar. 7, 2013) (in determining whether fraudulent joinder exists, district courts "may 'pierce the pleadings' and consider summary-judgment-type evidence").

14. Here, Century is fraudulently joined, as detailed below, because the plain allegations of the Complaint assert claims for sexual harassment, hostile work environment, retaliation, failure to prevent harassment and retaliation, wrongful

---

[2] Century joins in the removal of this lawsuit and requests the Court drop it as a misjoined party pursuant to Fed. R. Civ. P. 21.

4

DEFENDANT CINEMARK USA, INC.'S NOTICE OF REMOVAL OF ACTION PURSUANT TO
28 U.S.C §§ 1332, 1441, AND 1446 (DIVERSITY JURISDICTION)

termination in violation of public policy, and violation of employment without discrimination, yet Century did not own, lease or operate the theater at which Plaintiff worked and was not Plaintiff's employer. (Green Decl. ¶¶ 7, 11.) Cinemark, and not Century, owned and operated the theater at issue and Cinemark, not Century, was Plaintiff's employer. (Green Decl. ¶¶ 6, 11.)

### ii. Century Did Not Own Or Operate The Theater At Which Plaintiff Worked.

15. The Complaint alleges causes of action for (i) sexual harassment, hostile work environment; (ii) retaliation; (iii) failure to prevent harassment and retaliation; (iv) wrongful termination in violation of public policy; and (v) violation of employment without discrimination. All five causes of action are based on an incident of alleged sexual harassment at Plaintiff's workplace, Cinemark's Jess Ranch theatre (#1042), located at 18935 Bear Valley Road, Apple Valley, CA 92308 (hereinafter "Jess Ranch theatre").

16. Plaintiff's claims each depend upon a finding that the defendant was Plaintiff's employer. *See Vernon v. State*, 116 Cal. App. 4th 114, 123 (2004); *Weinbaum v. Goldfarb, Whitman & Cohen*, 46 Cal. App. 4th 1310, 1317 (1996).

17. However, Century was not Plaintiff's employer at any time. Century did not own, lease or operate the Cinemark Jess Ranch theater, did not hire Plaintiff, and did not pay her wages. Century, therefore, was not Plaintiff's employer. (Green Decl. ¶¶ 6, 8-9.) *See Vernon*, 116 Cal. App. 4th at 129-30 (employee-employer relationship is dependent on several factors including location of work, payment of wages, and the ability to hire or fire).

18. Rather, the Jess Ranch theater is leased and operated solely by Cinemark. (Green Decl., ¶ 6, Exh. 1.) Plaintiff was hired by Cinemark to work as an usher at the Cinemark Jess Ranch theater. (*Id.* at ¶¶ 11, 13, Exh. 3.) Since the date of hiring, Cinemark has been the sole entity paying Plaintiff's wages. (*Id.* ¶ 12; Exh. 2 (Plaintiff

5

DEFENDANT CINEMARK USA, INC.'S NOTICE OF REMOVAL OF ACTION PURSUANT TO
28 U.S.C §§ 1332, 1441, AND 1446 (DIVERSITY JURISDICTION)

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Wage Statement).) Cinemark also was the sole employer of the other employees who worked at the Jess Ranch theatre.(*Id.* ¶ 9.)

19. Because Century never was Plaintiff's employer and had no ownership or operational involvement in the Jess Ranch theatre where Plaintiff worked, Plaintiff cannot establish a cause of action against Century arising out of alleged sexual harassment that occurred at her workplace.

### iii. First Cause Of Action – Sexual Harassment/Hostile Work Environment

20. To state a claim for hostile work environment under the Fair Housing and Employment Act ("FEHA"), a plaintiff must allege that (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) the defendant is liable for the harassment. *See Fisher v. San Pedro Peninsula Hosp.* 214 Cal. App. 3d 590, 608 (1989). Only an employer can be held liable for a claim brought under the FEHA, including claims of sexual harassment. *See Vernon*, 116 Cal. App. 4th at 123 ("The FEHA predicates potential 'liability on the status of the defendant as an employer.'").

21. Here, Plaintiff alleges that Defendant Century, its agents or employees engaged in a pattern or practice of unlawful sexual harassment in violation of the FEHA and the harassment was sufficiently severe to create a hostile work environment. (Compl. ¶¶ 22-23.) Plaintiff cannot state a claim against Century for sexual harassment and hostile work environment, however, because Century did not own or operate the theater at which Plaintiff worked, did not pay Plaintiff's wages and did not have the authority to hire or fire Plaintiff. (Green Decl. ¶¶ 11-13.) In addition, Century did not employ any of the individuals at the Jess Ranch theatre who Plaintiff contends engaged in wrongful conduct toward her. All of the employees of the Jess

6

DEFENDANT CINEMARK USA, INC.'S NOTICE OF REMOVAL OF ACTION PURSUANT TO
28 U.S.C §§ 1332, 1441, AND 1446 (DIVERSITY JURISDICTION)

Ranch theatre were employees of Cinemark. (*Id.* ¶ 9.) Accordingly, Plaintiff cannot show that Century was her employer and that Century is liable for any alleged harassment. Thus, Plaintiff cannot establish this cause of action against Century.

### iv. Second Cause Of Action – Retaliation

22. To establish a prima facie case of retaliation in violation of the FEHA, a plaintiff must show (a) she engaged in protected activity; (b) she was subjected to an adverse employment action; and (c) a causal connection exists between the protected activity and the adverse employment action. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005). Only an employer can be held liable for a claim brought under the FEHA, including claims of retaliation. *See Vernon*, 116 Cal. App. 4th at 123.

23. Here, Plaintiff alleges that in August 2017 and September 2017, she complained to managers at the Jess Ranch theatre about alleged sexual harassment. (Compl. ¶¶ 12,15-16.) Plaintiff alleges that Century retaliated against her by "refusing to change the schedule, demoting her, and constructively terminating Plaintiff." (Compl. ¶ 30.) Plaintiff cannot state a claim against Century for retaliation, however, because Century did not own or operate the theater where Plaintiff worked, did not pay Plaintiff's wages, and was not Plaintiff's employer. (Green Decl. ¶ 11-13.) Further, the other employees at the Jess Ranch theatre that Plaintiff contends retaliated against her also were employees only of Cinemark and not Century. (*Id.* ¶ 9). Thus, Century could not have taken an adverse employment action against Plaintiff.

### v. Third Cause Of Action – Failure To Prevent Harassment And Retaliation

24. In order to establish a claim for failure to prevent sexual harassment and retaliation, a plaintiff must first establish a claim for sexual harassment and retaliation. *Dickson v. Burke Williams, Inc.*, 234 Cal. App. 4th 1307, 1316 (2015), as modified on denial of reh'g (Mar. 24, 2015) ("there can be no claim for failure to take reasonable steps necessary to prevent sexual harassment when an essential element of

7

sexual harassment liability has not been established."). In other words, Century cannot be liable for failing to prevent sexual harassment or retaliation that it never had any part in.

25. Here, Plaintiff's cause of action for failure to prevent sexual harassment and retaliation is premised on her first and second causes of action for sexual harassment/hostile work environment and retaliation. Plaintiff cannot state a claim against Century for failure to prevent sexual harassment and retaliation because Plaintiff cannot establish her underlying claims against Century, as discussed above. Consequently, because Plaintiff cannot state a claim against Century for sexual harassment or retaliation, she also cannot state a claim against Century for failure to prevent sexual harassment and retaliation.

### vi. Fourth Cause Of Action – Wrongful Termination In Violation Of Public Policy

26. To state a claim for wrongful discharge in violation of public policy, a plaintiff must plead (1) a termination or other adverse employment action; (2) the termination or other action was a violation of a fundamental public policy, as expressed in a constitutional, statutory, or regulatory provision; and (3) a nexus between the adverse action and the employee's protected status or activity. *Yanowitz*, 36 Cal. 4th at 1042. Because wrongful termination arises from the employee-employer relationship, a non-employer is "legally incapable of committing the tort of wrongful discharge in violation of public policy." *Weinbaum*, 46 Cal. App. 4th at 1317.

27. Here, Plaintiff alleges that Century's allowance of sexual harassment and retaliation "constructively discharged Plaintiff's employment." (Compl. ¶ 43.) However, Plaintiff has not alleged and cannot allege that Century terminated or had any control over Plaintiff's termination. Century did not own or operate the Cinemark Jess Ranch theater where Plaintiff worked, did not pay Plaintiff's wages, did not have

the authority to hire or fire Plaintiff and thus, was not Plaintiff's employer. (Green Decl. ¶ 11-13.) Century also did not employ the other employees at the Jess Ranch theatre that Plaintiff contends constructively terminated her employment. (*Id.* ¶ 9.) Thus, Plaintiff cannot establish this cause of action against Century.

### vii. Fifth Cause Of Action – Violation Of Employment Without Discrimination As A Civil Right

28. Plaintiff's fifth cause of action seeks declaratory relief as to her rights under Govt. Code § 12921(a) as to her first four causes of action. (Compl. ¶¶48-55.) As discussed above, Plaintiff cannot establish her first four causes of action against Century because it is not Plaintiff's employer.

29. **Doe Defendants.** Although Plaintiff has also named defendants Does 1 through 10, "[f]or purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(a); *see also Fristos v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition). Thus, the existence of "Doe" defendants does not deprive the Court of jurisdiction.

30. In conclusion and as set forth above, complete diversity of citizenship exists under 28 U.S.C. § 1332, and removal is proper in this case pursuant to 28 U.S.C. § 1441.

### B. The Amount In Controversy Requirement Is Satisfied.

31. In her Complaint, Plaintiff seeks compensatory and general damages; past and future lost income and benefits (i.e., back pay and front pay); emotional distress damages[3]; punitive damages; and attorneys' fees. (Compl. Prayer ¶¶ 1-7.) As set forth below, Plaintiff's allegations establish that there is more than $75,000 at issue, exclusive of interest and costs.

---

[3] While Plaintiff does not expressly seek these damages in the Prayer for Relief, she includes them throughout her Complaint. (*See, e.g.*, Compl. ¶¶ 25, 32, 39, 45)

9

32. Plaintiff's Complaint does not specify the amount that she seeks to recover from Defendants in this action. Where removal is based on diversity of citizenship and the initial pleading seeks a money judgment but does not demand a specific sum, "the notice of removal may assert the amount in controversy," 28 U.S.C. 1446(c)(2), and a removing defendant "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S.Ct. 547, 554 (2014).

33. In measuring the amount in controversy, the Court must assume that the allegations of the Complaint are true and that a jury will return a verdict in favor of the plaintiff on all claims asserted in the Complaint. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). The ultimate inquiry is the amount that is put "in controversy" by the Complaint, and not how much, if anything, the defendant will actually owe. *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) (*citing Schere v. Equitable Life Assurance Soc'y of the United States*, 347 F.3d 394, 399 (2d Cir. 2003) (recognizing that the ultimate or provable amount of damages is not what is considered in the removal analysis; rather, it is the amount put in controversy by the plaintiff's complaint)). In determining the amount in controversy, the Court may consider damages awards in similar cases. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005).

34. Although Cinemark denies the validity and merit of all of Plaintiff's claims and allegations and denies that Plaintiff is entitled to any relief, Plaintiff's claims establish an amount "in controversy" in excess of the jurisdictional minimum of $75,000, exclusive of interest and costs, as set forth below:

35. **Lost Earnings.** Plaintiff alleges she was constructively terminated from her position as shift leader on October 5, 2017. (Compl. ¶¶ 9, 16-18.) At the time of her separation from Cinemark in October 2017, Plaintiff was working 25-35 hours per week and was earning $10.860 per hour. (Green Decl. ¶ 14.) Assuming Plaintiff

worked on average 30 hours per week, Plaintiff had the potential to earn approximately $16,941.60 per year[4], excluding overtime, and assuming Plaintiff can prove, as she claims, that she would have continued to work for Defendants from the date of her alleged constructive termination to the present (a period of approximately 13 months), Plaintiff's claim for lost wages to date would equal approximately $18,353.40.[5] *See Garcia v. ACE Cash Express, Inc.*, 2014 WL 2468344, at *4 (C.D. Cal. May 30, 2014) (noting plaintiff's lost wages at time of removal were calculated by "establishing each Plaintiff's respective monthly incomes at the time of termination and multiplying that by twelve (the number of months between termination and removal)," which was relevant to finding that amount in controversy was satisfied).

36.   It is also reasonable to assume that Plaintiff will claim alleged lost wages from the present until the time of trial equal to at least $16,941.60 – her annual wages. In *Garcia*, the court denied a plaintiff's motion to remand based in part on an estimate of the plaintiff's lost wages after the date of removal. There, the court relied on a calculation of lost wages from the date of termination through removal, and held that "adding wages for the estimated time between removal and trial" was reasonable to establish the amount in controversy. 2014 WL 2468344, at *4; *see also Villa v. Majestic Terminal Servs. Inc.*, 2017 WL 4570759, at *2 (C.D. Cal. Oct. 12, 2017) ("Calculating back pay until the date of judgment is a "reasonable assumption[ ]"); *Harrod v. Bass Pro Outdoor World, L.L.C.*, 2018 WL 705541, at *2 (C.D. Cal. Feb. 5, 2018) (finding back pay "from the time of the unlawful adverse action until the date of judgment" was proper to establish the amount in controversy); *James v. Childtime Childcare, Inc.*, 2007 WL 1589543, at *2 (E.D. Cal. June 1, 2007) ("Beyond roughly $12,700 in lost wages already accrued at the time of removal, the amount in controversy in this action includes additional back pay accrued following removal.").

---

[4] Calculated as follows: $10.860/ hour x 30 hours/week x 52 weeks/year = $16,941.60.

[5] Calculated as follows: ($16,941.60/12 months) x 13 months = $18,353.40.

Here, Cinemark reasonably believes that Plaintiff will claim alleged back pay through trial of at least $35,295.[6]

37. If Plaintiff prevails on her claims, she may also recover future lost wages – which may be considered to satisfy the amount in controversy. *See Harrod*, 2018 WL 705541, at *2. In *Harrod*, the court found the defendant had satisfied the amount in controversy requirement because, beyond the $9,350 to $14,399 of back pay damages through the date of judgment, it included a "reasonable estimate of front pay" for the time after trial. *Id.* Cinemark reasonably believes that Plaintiff will claim at least two years of future lost earnings, which amounts to $33,883.20.[7]

38. **Emotional Distress Damages.** Plaintiff also alleges that she has suffered emotional distress damages. (*See, e.g.,* Compl. ¶ 32.) Plaintiff's potential recovery of such damages further augments the foregoing amount and demonstrates that the jurisdictional prerequisite for removal of this action is met. *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) (holding that emotional distress damages are included in determining amount in controversy).

39. In *Kroske*, the Ninth Circuit found that the district court's conclusion that the plaintiff's "emotional distress damages would add at least an additional $25,000 to her claim" was not clearly erroneous, where she had only $55,000 in lost wages, thus satisfying the amount in controversy requirement "even without including a potential award of attorney's fees." 432 F.3d at 980. Based on the conservative estimate from *Kroske*, Plaintiff's potential recovery of emotional distress damages could add at least $25,000 to the amount in controversy.

40. **Punitive (Exemplary) Damages.** Plaintiff also seeks an award of

---

[6] This is an estimate of lost wages through the date of trial, based on current alleged lost wages of $18,353.40 and additional alleged lost wages through an estimated trial date one year away of $16,941.60.

[7] Calculated as follows: $10.860/ hour x 30 hours/week x 52 weeks/year x 2 years = $33,883.20.

punitive damages. (Compl. Prayer ¶ 4.) "In determining the amount in controversy, the court must consider the amount of actual and punitive damages." *Nasiri v. Allstate Indem. Co.*, 41 Fed. Appx. 76, 77 (9th Cir. 2002); *see also Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) (stating that "[i]t is well established that punitive damages are part of the amount in controversy in a civil action."). A single-digit ratio (i.e., no more than nine-to-one) is typically appropriate for an award of punitive damages. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003).

41. In a recent case alleging sexual harassment and constructive discharge, as Plaintiff alleges here, the jury awarded the plaintiff $125,000 in punitive damages. *See Joan A. v. Top Industrial Inc.*, BC571653, 2016 WL 7911666 (Los Angeles Sup. Ct., Oct. 28, 2016). Other cases involving allegations of sexual harassment have awarded even larger punitive damages awards. *See, e.g. Olivas-Dean v. American Meizhou Dongpo Group Inc.*, BC581538, 2017 WL 3531353 (Los Angeles Sup. Ct., Apr. 24, 2017) (awarding $250,000 in punitive damages in sexual harassment case). A copy of these verdicts are attached hereto as **Exhibit C**. Although Cinemark denies that Plaintiff will be able to recover any punitive damages against Defendants, it is reasonable to estimate that Plaintiff will seek at least $50,000 in punitive damages in connection with her claims against Defendants, satisfying the amount in controversy requirement.

42. **Attorneys' Fees.** Plaintiff also seeks attorneys' fees which may be awarded under the FEHA. *See* Cal. Gov't Code § 1295(b). "[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998).

43. Plaintiff's Complaint alleges multiple violations of the FEHA, which authorizes an award of reasonable attorneys' fees to a prevailing plaintiff. Cal. Gov. Code §12965(b). While Plaintiff's attorneys' fees cannot be precisely calculated, it is

1  reasonable to assume that they could exceed a damages award. *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1035 (N.D. Cal. 2002) (noting that "attorneys' fees in individual discrimination cases often exceed the damages").

44. Any estimate of attorney's fees includes fees over the life of the case, not just the fees incurred at the time of removal. *Id*. "Recent estimates for the number of hours expended through trial for employment cases in [the Central District of California] have ranged from 100 to 300 hours. Therefore, 100 hours is an appropriate and conservative estimate. Accordingly, attorneys' fees in [an employment discrimination case alleging wrongful termination] may reasonably be expected to equal at least $30,000 (100 hours x $300 per hour)." *Sasso v. Noble Utah Long Beach, LLC*, 2015 U.S. Dist. LEXIS 25921, at *12 (C.D. Cal. 2015) (citations omitted). Thus, Plaintiff's demand for attorneys' fees adds at least $30,000 to the amount in controversy.

45. **Total Amount In Controversy.** Based on the foregoing, a preponderance of the evidence demonstrates that the amount in controversy requirement is plainly met[8], and removal to this Court is proper under diversity of citizenship jurisdiction.

WHEREFORE, Cinemark hereby removes this Action from the Superior Court of the State of California, County of San Bernardino, to this Court, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

---

[8] Based on Cinemark's reasonable calculations, Plaintiff seeks: back pay, equal to $35,295 + front pay, equal to $33,883.20 + emotional distress damages, equal to $25,000 + punitive damages, equal to $50,000 + attorneys' fees, equal to $30,000 = $174,178.20.

DATED: November 15, 2018      **HUNTON ANDREWS KURTH LLP**

By: /s/ Emily Burkhardt Vicente
Emily Burkhardt Vicente
Sonya D. Goodwin
Attorneys for Defendant
CINEMARK USA, INC.

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**